**Reversed and Rendered and Memorandum Opinion filed September 25, 2018.**



In The

# Fourteenth Court of Appeals

---

### NO. 14-17-00662-CV

---

### HARRIS COUNTY, TEXAS, Appellant

### V.

### GEORGE J. SPEARS, Appellee

---

**On Appeal from the 127th District Court
Harris County, Texas
Trial Court Cause No. 2016-02239**

---

## M E M O R A N D U M   O P I N I O N

Deputy Corporal Danny Baskins was responding to a medical emergency call when he approached a red light at an intersection in northeast Harris County. The cars stopped at the red light moved to permit Deputy Baskins to proceed through the intersection. As Deputy Baskins drove through the intersection, a car driven by appellee, George J. Spears, collided with Deputy Baskins's patrol vehicle.

Spears sued Harris County and asserted claims for negligence arising from

the collision. Harris County filed a combined motion for summary judgment and plea to the jurisdiction asserting that Spears's claims were barred by (1) Deputy Baskins's official immunity; and (2) the Texas Tort Claim Act's emergency response exception. The trial court denied Harris County's combined motion for summary judgment and plea to the jurisdiction in an order signed July 20, 2017. For the reasons below, we reverse the trial court's July 20, 2017 order and render a take-nothing judgment in favor of Harris County.

## BACKGROUND

Deputy Baskins was driving his patrol vehicle in northeast Harris County on January 25, 2014, when he received "a Priority One call over [his] police radio." The call notified Deputy Baskins that a medical emergency was underway, possibly involving a suicide. Deputy Baskins activated his patrol vehicle's emergency lights and siren and drove to the scene of the incident. Deputy Baskins was the backup unit responding to the call.

While en route, Deputy Baskins drove east on Ella Boulevard at approximately 45 m.p.h. The speed limit on Ella Boulevard is 40 m.p.h. Deputy Baskins approached a red light at the intersection of Ella Boulevard and Kuykendahl Road and slowed almost to a complete stop behind several cars stopped at the red light. The cars moved to permit Deputy Baskins to proceed through the intersection. As Deputy Baskins drove through the Ella-Kuykendahl intersection, a vehicle driven by Spears hit the rear passenger side of Deputy Baskins's patrol vehicle. Spears was traveling north on Kuykendahl Road and had a green light at the Ella Boulevard intersection.

Deputy Baskins estimates that he was traveling between 10 and 15 m.p.h. at the time of the collision. Deputy Baskins's affidavit states that his patrol vehicle's lights and siren were activated as he drove through the Ella-Kuykendahl

2

intersection. In the dash cam video recovered from Deputy Baskins's patrol vehicle, the vehicle's siren clearly can be heard and was operating at the time of the collision.

The Harris County Precinct Four accident review board issued an employee personnel action notice after reviewing the collision. The notice states, in relevant part:

> [T]he Board finds that [Deputy Baskins] failed to exercise due care when operating a county patrol vehicle by Running a Red Light and failing to properly clear the intersection prior to entering it while running emergency equipment. The Board recommends that [Deputy Baskins] receive Written Disciplinary Action, 1 day unpaid suspension, attendance at a Defensive Driving Class within 90 days, and a 1 year reckoning period.

Spears sued Harris County asserting negligence claims arising from his collision with Deputy Baskins. Harris County filed a combined motion for summary judgment and plea to the jurisdiction asserting that Spears's claims were barred by (1) Deputy Baskins's official immunity; and (2) the Texas Tort Claim Act's emergency response exception. The evidence attached to Harris County's combined motion and plea to the jurisdiction included (1) the collision's crash report; (2) the call slip for the call that Deputy Baskins was responding to at the time of the collision; (3) the Harris County Precinct Four accident review board's incident report and employee personnel action notice; (4) Deputy Baskins's affidavit; (5) the affidavit of Traffic Safety Director Sergeant Michael Hartley, who investigated the collision; (6) Spears's deposition; and (7) Deputy Baskins's dash cam video that recorded the collision.

The trial court signed an order on July 20, 2017, denying Harris County's combined motion for summary judgment and plea to the jurisdiction. Harris County timely appealed.

3

## STANDARD OF REVIEW

A governmental entity generally is immune from tort liability. *Fort Worth Transp. Auth. v. Rodriguez*, 547 S.W.3d 830, 835 (Tex. 2018). Governmental immunity from suit defeats a trial court's subject matter jurisdiction and is properly asserted in a plea to the jurisdiction. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 225-26 (Tex. 2004). We review *de novo* a plea challenging the trial court's jurisdiction. *Univ. of Tex. M.D. Anderson Cancer Ctr. v. Jones*, 485 S.W.3d 145, 148 (Tex. App.—Houston [14th Dist.] 2016, pet. denied).

When a plea to the jurisdiction challenges the existence of jurisdictional facts, we must consider the relevant evidence submitted by the parties. *Quested v. City of Houston*, 440 S.W.3d 275, 279 (Tex. App.—Houston [14th Dist.] 2014, no pet.). The standard for this review "'generally mirrors that of a summary judgment under Texas Rule of Civil Procedure 166a(c).'" *Id*. (quoting *Miranda*, 133 S.W.3d at 226). We credit evidence favorable to the nonmovant and draw all reasonable inferences in the nonmovant's favor. *Id*. at 280.

## ANALYSIS

Harris County asserts that the trial court erred in denying its combined motion for summary judgment and plea to the jurisdiction because Spears's claims are barred by (1) Deputy Baskins's official immunity; and (2) the Texas Tort Claim Act's emergency response exception. Because we conclude that the emergency response exception bars Spears's claims, we do not address Harris County's official immunity arguments on appeal.

## I. The Texas Tort Claims Act and the Emergency Response Exception

Harris County is a governmental entity and cannot be liable for an employee's actions unless its governmental immunity has been waived. *See*

*Harris Cty. v. Sykes*, 136 S.W.3d 635, 640-41 (Tex. 2004). The Texas Tort Claims Act ("TTCA") provides a limited waiver of a governmental entity's immunity for certain claims:

> A governmental unit in the state is liable for:
>
> (1) property damage, personal injury, and death proximately caused by the wrongful act or omission or the negligence of an employee acting within his scope of employment if:
>
> > A. the property damage, personal injury, or death arises from the operation or use of a motor-driven vehicle or motor-driven equipment; and
> >
> > B. the employee would be personally liable to the claimant according to Texas law; and
>
> (2) personal injury and death so caused by a condition or use of tangible personal or real property if the governmental unit would, were it a private person, be liable to the claimant according to Texas law.

Tex. Civ. Prac. & Rem. Code Ann. § 101.021 (Vernon 2011). Exempted from this waiver of immunity are claims included in the TTCA's "emergency response exception" that arise:

> [F]rom the action of an employee while responding to an emergency call or reacting to an emergency situation if the action is in compliance with the laws and ordinances applicable to emergency action, or in the absence of such a law or ordinance, if the action is not taken with conscious indifference or reckless disregard for the safety of others[.]

*Id*. § 101.055(2) (Vernon 2011); *see also City of San Antonio v. Hartman*, 201 S.W.3d 667, 671-72 (Tex. 2006).

The law governing the operation of emergency vehicles is found in section 546.005 of the Texas Transportation Code, which provides that a driver of an emergency vehicle is not relieved of "the consequences of reckless disregard for

the safety of others."  Tex. Transp. Code Ann. § 546.005(2) (Vernon 2011); *see also City of Brazoria v. Ellis*, No. 14-14-00332-CV, 2015 WL 3424732, at \*7 (Tex. App.—Houston [14th Dist.] May 28, 2015, no pet.) (mem. op.) (analyzing the emergency response exception, the court applied section 546.005 as "the law . . . applicable to emergency action").  "To recover damages resulting from the emergency operation of an emergency vehicle, a plaintiff must show that the operator has committed an act that the operator knew or should have known posed a high degree of risk of serious injury."  *City of Amarillo v. Martin*, 971 S.W.2d 426, 430 (Tex. 1998).[1]

The burden of proof is on the plaintiff to show that the emergency response exception does not apply.  *Hartman*, 201 S.W.3d at 672; *Quested*, 440 S.W.3d at 284.  This burden required Spears to present evidence sufficient to raise an issue of fact showing that Deputy Baskins (1) was not responding to an emergency call or reacting to an emergency situation; or (2) failed to comply with the applicable law by acting with reckless disregard for the safety of others.  *See Quested*, 440 S.W.3d at 284; *see also* Tex. Civ. Prac. & Rem. Code Ann. § 101.055(2); Tex. Transp. Code Ann. § 546.005(2).

## II.     Application of the Emergency Response Exception

Asserting that the emergency response exception does not limit Harris County's waiver of immunity, Spears argues that (1) Deputy Baskins was not responding to an "emergency call;" and (2) Deputy Baskins's actions at the time of

---

[1] *City of Amarillo v. Martin* interprets the statutory predecessor to Texas Transportation Code section 546.005.  *See* 971 S.W.2d at 428-30.  Like the current version of section 546.005, the statute analyzed in *Martin* stated that the driver of an emergency vehicle is not protected "from the consequences of his reckless disregard for the safety of others."  *See* Act of June 5, 1947, 50th Leg., R.S., ch. 421, § 24, 1947 Tex. Gen. Laws 967, 970-71, *repealed by* Act of May 1, 1995, 74th Leg., R.S., ch. 165, § 1, 1995 Tex. Gen. Laws 1025, 1647; Tex. Civ. Prac. & Rem. Code Ann. § 546.005(2).

the collision were reckless.

## A. Responding to an Emergency Call or Emergency Situation

The emergency response exception applies to an employee's actions taken "while responding to an emergency call or reacting to an emergency situation." Tex. Civ. Prac. & Rem. Code Ann. § 101.055(2). Spears asserts that Deputy Baskins was not responding to an emergency call or an emergency situation because Deputy Baskins was the second responder to a priority two call.

The parties' evidence conflicts with respect to whether Deputy Baskins was responding to a priority one or a priority two call at the time of the collision. Deputy Baskins's affidavit states that he was responding to a priority one call indicating a "Medical Emergency/possible suicide." The call slip states that the call was a priority two. The accident review board's personnel action notice states that the call was a priority one.[2]

The TTCA does not define the terms "emergency call" or "emergency situation," but Texas courts have interpreted the term "emergency" broadly. *See, e.g., Hartman*, 201 S.W.3d at 672 (concluding that section 101.055(2) applied to a suit involving the city's reaction to roadway flooding); *Pakdimounivong v. City of Arlington*, 219 S.W.3d 401, 410-11 (Tex. App.—Fort Worth 2006, pet. denied) (officers were responding to an emergency situation where suspect in back of patrol car tried to escape through car window); *see also Jefferson Cty. v. Hudson*, No. 09-11-00168-CV, 2011 WL 3925724, at *3 (Tex. App.—Beaumont Aug. 25, 2011, no pet.) (mem. op.) ("emergency" as used in section 101.055 "refers to unforeseen circumstances that call for immediate action").

---

[2] Deputy Baskins's affidavit states that a priority one call may be downgraded to priority two "[a]fter units arrive at the location and the scene is secure." The evidence in the record does not indicate that the call Deputy Baskins received on January 25, 2014, was downgraded from a priority one to a priority two.

Claims arising from the operation of a patrol vehicle in response to an emergency fall within the scope of section 101.055(2). *See, e.g., Martin*, 971 S.W.2d at 427, 432 (emergency response exception barred the plaintiff's claims arising from intersectional collision with vehicle that was responding to an emergency); *City of Pasadena v. Kuhn*, 260 S.W.3d 93, 99-100 (Tex. App.—Houston [1st Dist.] 2008, no pet.) (same).

Crediting evidence favorable to Spears and drawing all reasonable inferences in his favor, our analysis proceeds under the assumption that Deputy Baskins was responding to a priority two call at the time of the collision. *See Quested*, 440 S.W.3d at 279. Spears does not dispute that, at the time of the collision, Deputy Baskins was responding to a medical emergency involving a possible suicide. Spears does not dispute that this type of call requires an immediate response.

Describing the necessary response to a "Medical Emergency/possible suicide" call, Deputy Baskins's affidavit states that it "is important to arrive at the site of the incident as soon as possible" and "it is imperative to arrive before family or others to preserve the integrity of the scene." Sergeant Hartley's affidavit corroborates these statements and asserts that Deputy Baskins's "immediate presence was necessary" and that Deputy Baskins "had to reach the scene as quickly as he could."

This evidence is sufficient to show that Deputy Baskins was responding to an "emergency" at the time of the collision. *See* Tex. Civ. Prac. & Rem. Code Ann. § 101.055; *Martin*, 971 S.W.2d at 432; *Kuhn*, 260 S.W.3d at 99-100. Therefore, the burden shifts to Spears to raise a genuine issue of material fact with respect to whether Deputy Baskins was responding to an "emergency call" or "emergency situation" at the time of the collision. *See Hartman*, 201 S.W.3d at

8

672; *Quested*, 440 S.W.3d at 284.

Spears asserts that a priority two call is not an "emergency call" as necessary to invoke the emergency response exception. In support of this assertion, he cites *City of Houston v. Daniels*, 66 S.W.3d 420 (Tex. App.—Houston [14th Dist.] 2001, no pet.), and *City of Austin v. Albarran*, No. 03-10-00328-CV, 2011 WL 2533751 (Tex. App.—Austin June 23, 2011, no pet.) (mem. op.). These cases do not support Spears's contention.

*Daniels* analyzed the city's immunity in connection with claims arising from a police officer's collision with a city bus while responding to a priority two call involving domestic violence. 66 S.W.3d at 422. The significance of a priority two call was discussed in the context of whether the officer "was performing a discretionary function" as necessary to invoke official immunity. *Id*. at 425. The court concluded that the plaintiff's claims were not barred by the officer's official immunity; the court did not address the emergency response exception. *Id*. at 424-25.

*Albarran* likewise discussed whether a police officer's actions in response to a priority two call were "discretionary functions" as necessary to invoke the officer's official immunity. 2011 WL 2533751, at *3-6. *Albarran* did not hold that a priority two call is not an emergency. *See id*.

Spears also asserts that Deputy Baskins's status as the backup responder forecloses application of the emergency response exception. In support of this assertion, he cites *Perez v. Webb County*, 511 S.W.3d 233 (Tex. App.—San Antonio 2015, pet. denied), and *Gwynn v. Tobin*, No. 03-02-00759-CV, 2003 WL 21554331 (Tex. App.—Austin July 11, 2003, no pet.) (mem. op.). But neither *Perez* nor *Gwynn* support this proposition.

9

*Perez* did not indicate whether the officer involved in the collision was a backup responder. *See Perez*, 511 S.W.3d at 234-35. Testimony from the officer arguably suggested he was the first responder. *See id*. at 237 (explaining his decision to respond to the call, the officer testified that "he heard the dispatch, and he knew the officer assigned to the area of the call was busy with another case . . . .")

The paramedic in *Gwynn* was not the first responder and evidence showed that "other personnel were on the scene." 2003 WL 21554331, at *3. The significance of the paramedic's secondary responder status was discussed in the context of the paramedic's official immunity; the court did not determine that the paramedic's status barred application of the emergency response exception. *See id*. at *3-4.

Spears's cited cases do not support limiting the emergency response exception because of Deputy Baskins's status as a backup responder to a priority two call. Accordingly, Spears failed to raise an issue of fact showing that Deputy Baskins was not responding to an "emergency call" or "emergency situation" at the time of the collision.

## B. Reckless Disregard

Spears asserts that Deputy Baskins's actions at the time of the collision were reckless and preclude application of the emergency response exception. Spears points to evidence that:

1. Deputy Baskins's visibility at the Ella-Kuykendahl intersection was obscured;

2. Deputy Baskins's decision to drive through the intersection on a red light;

3. Deputy Baskins drove the patrol vehicle approximately five miles over the posted speed limit; and

10

4.    the accident review board's written reprimand that concluded Deputy Baskins "failed to exercise due care when operating a county patrol vehicle by Running a Red Light . . . ."

To recover damages from a collision resulting from the emergency operation of an emergency vehicle, a plaintiff must show "reckless disregard for the safety of others" and establish that the emergency vehicle's operator "committed an act that the operator knew or should have known posed a high degree of risk of serious injury." *Martin*, 971 S.W.2d at 430; *see* Tex. Civ. Prac. & Rem. Code Ann. § 101.055(2); Tex. Transp. Code Ann. § 546.005(2). This standard "requires a showing of more than a momentary judgment lapse." *Martin*, 971 S.W.2d at 430 (internal quotation omitted).

The evidence shows that Deputy Baskins was not acting with reckless disregard at the time of the collision. While responding to a medical emergency call, Deputy Baskins drove his patrol vehicle with the siren and lights activated and slowed almost to a complete stop behind several cars stopped at a red light at the Ella-Kuykendahl intersection.[3] The cars parted to permit Deputy Baskins to drive through the intersection. Before entering the intersection, Deputy Baskins:

> [L]ooked at the northbound traffic on Kuykendahl Rd and saw that the cars had stopped, as had the cars facing [him] on the opposite side of Ella Blvd. [Deputy Baskins] looked at the southbound traffic on Kuykendahl Rd and did not see any traffic movement.

Deputy Baskins "knew that cars had seen and heard [his] emergency equipment because cars had moved to the side of the road when [he] approached." Deputy Baskins did not see any approaching cars and drove through the intersection.

---

[3] At his deposition, Spears agreed that Deputy Baskins's emergency lights were activated at the time of the collision. When asked about Deputy Baskins's siren, Spears testified that he did not know if the siren was activated and he did not hear it. Deputy Baskins's and Sergeant Hartley's affidavits state that Deputy Baskins's siren was activated at the time of the collision. The siren clearly can be heard in the dash cam video showing the collision.

Deputy Baskins estimates that he was traveling approximately 10 to 15 m.p.h. when Spears hit the rear passenger side of his patrol vehicle. This evidence is sufficient to show that Deputy Baskins was not acting with reckless disregard for the safety of others at the time of the collision. *See Tex. Dep't of Pub. Safety v. Sparks*, 347 S.W.3d 834, 841-42 (Tex. App.—Corpus Christi 2011, no pet.) (evidence showed that, when the intersectional collision occurred, the officer was responding to an emergency call with his lights and siren activated, he "slowed or stopped as he reached the intersection," and entered intersection "cautiously;" evidence sufficient to show the officer did not act recklessly); *Kuhn*, 260 S.W.3d at 99-100 (evidence did not show that the officer was acting with conscious indifference or reckless disregard where evidence showed that the officer was responding to an emergency, had activated his emergency lights and siren, and slowed down before driving through intersection); *City of San Angelo Fire Dep't v. Hudson*, 179 S.W.3d 695, 701-02 (Tex. App.—Austin 2005, no pet.) (no evidence of reckless disregard when the officer entered the intersection without stopping and the witness did not hear brakes being applied); *Smith v. Janda*, 126 S.W.3d 543, 545-46 (Tex. App.—San Antonio 2003, no pet.) (no evidence of reckless disregard where ambulance driver was responding to an emergency with lights and siren activated, "slowed down and looked around" as he approached the intersection, and entered the intersection after "seeing that all traffic had stopped or yielded to him").

Spears does not raise a genuine issue of fact with respect to whether Deputy Baskins's actions at the time of the collision were reckless.

Spears points out that Deputy Baskins's visibility was obscured when he entered the Ella-Kuykendahl intersection, and Deputy Baskins's affidavit states his view of the southbound traffic on Kuykendahl Road was "partially obscured by the

southbound left turn lane." But this evidence, when combined with the other evidence showing the precautions Deputy Baskins took before entering the intersection, does not create an issue of fact with respect to recklessness. *See Kuhn*, 260 S.W.3d at 100 ("[w]hether the intersection [wa]s blind" did not create an issue of fact where evidence showed that the officer "had on his emergency lights and siren and that he slowed before entering the intersection"). As the court stated in *Kuhn*, "[a]ny intersection that an officer attempts to traverse when responding to an emergency is potentially a 'blind intersection.'" *Id*.

Deputy Baskins's decision to drive through the intersection's red light does not give rise to an issue of fact with respect to recklessness. Texas Transportation Code section 546.001(2) provides that an emergency vehicle operator responding to an emergency call is allowed to proceed against a red traffic light after slowing for safe operation. Tex. Transp. Code Ann. § 546.001(2) (Vernon 2011). The dash cam video shows that Deputy Baskins slowed almost to a complete stop at the Ella-Kuykendahl intersection before driving through the red light. Deputy Baskins states in his affidavit that he drove through the intersection at 10 to 15 m.p.h. after checking that the intersection was clear. This evidence does not show that Deputy Baskins failed to "slow for safe operation" before entering the intersection. Driving through a red light, on its own, does not raise an issue of fact with respect to recklessness. *See Sparks*, 347 S.W.3d at 842.

Spears asserts that Deputy Baskins was reckless because he was "speeding five (5) miles more than the posted speed signs." Deputy Baskins states in his affidavit that the speed limit on Ella Boulevard is 40 m.p.h., and he drove 45 m.p.h. on Ella when responding to the medical emergency call. But Deputy Baskins's speeding occurred before he approached the Ella-Kuykendahl intersection where the collision occurred — Deputy Baskins's affidavit and the

13

dash cam video show that Deputy Baskins slowed his speed considerably before entering the intersection and came almost to a complete stop. Evidence that Deputy Baskins exceeded the speed limit before he approached the intersection does not show that Deputy Baskins's actions at the intersection were reckless.

Finally, Spears points to the accident review board's employee personnel action notice, which states that Deputy Baskins "failed to exercise due care when operating a county patrol vehicle by Running a Red Light." The accident review board's reprimand does not create an issue of fact regarding recklessness — rather, the board's conclusion that Deputy Baskins "failed to exercise due care" is evidence only that Deputy Baskins acted negligently in entering the intersection. *See City of Arlington v. Barnes*, No. 2-07-249-CV, 2008 WL 820385, at *4 (Tex. App.—Fort Worth Mar. 27, 2008, pet. denied) (mem. op.) (accident review board's conclusion that officer "failed to exercise due care in entering intersection" was not evidence that the officer acted recklessly); *see also Davis-Lynch, Inc. v. Asgard Techs., LLC*, 472 S.W.3d 50, 63 (Tex. App.—Houston [14th Dist.] 2015, no pet.) (negligence imposes liability for a "failure to use due care"); *Brown & Brown of Tex., Inc. v. Omni Metals, Inc.*, 317 S.W.3d 361, 388 (Tex. App.—Houston [1st Dist.] 2010, pet. denied) (same). This evidence does not show that Deputy Baskins committed an act he knew or should have known posed a high degree of risk or serious injury. *See Martin*, 791 S.W.2d at 430.

In sum, the evidence satisfies the emergency response exception and shows that Deputy Baskins (1) was responding to an emergency call at the time of the collision; and (2) did not act recklessly when entering the intersection. *See* Tex. Civ. Prac. & Rem. Code Ann. § 101.055(2). Spears's arguments on appeal do not create a material issue of fact with respect to the emergency response exception. We sustain Harris County's issue with regard to the emergency response exception

and conclude that the TTCA does not waive Harris County's immunity with respect to Spears's claims arising from his collision with Deputy Baskins.

## CONCLUSION

We reverse the trial court's July 20, 2017 order denying Harris County's combined motion for summary judgment and plea to the jurisdiction. We render a take-nothing judgment in favor of Harris County.

/s/    William J. Boyce
        Justice

Panel consists of Justices Boyce, Donovan, and Wise.